**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TABITHA SILBAUGH,     )
            )
     Plaintiff,   )
            )
  vs.        )  Civil Action No. 3:25-cv-494
            )  Judge D. Brooks Smith
BROOKVILLE HOSPITAL, *et al.*,  )
            )
     Defendants.  )

**MEMORANDUM and ORDER OF COURT**

In an emergency room, discrimination saves lives; applying principles of triage, staff classify patients according to the severity of their ailments and then prioritize treatment of those who face the greatest risk. But what is benevolent in one domain can be pernicious in another. When discrimination of various types seeps into personnel management, lawsuits often follow. That's what Plaintiff Tabitha Silbaugh ("Silbaugh") alleges happened here.

Silbaugh, a former Medical Receptionist, claims that her erstwhile employers, Defendants Brookville Hospital d/b/a Penn Highlands Family Medicine ("Brookville") and Penn Highlands Healthcare ("Penn Highlands")[1] (collectively,

---

[1] Penn Highlands operates nine hospitals across Pennsylvania, including Brookville. *See Penn Highlands Healthcare Hospitals*, PENN HIGHLANDS HEALTHCARE, https://www.phhealthcare.org/hospitals-penn-highlands-healthcare (last visited May 5, 2026).

1

"Defendants"), terminated her and subjected her to a hostile work environment in violation of the federal Age Discrimination in Employment Act ("ADEA"). She also accuses Defendants of defamation under Pennsylvania state law. Defendants have moved to dismiss the defamation claim. But because Silbaugh's complaint sets forth a viable claim, that motion will be denied.

## I.    Factual Background[2]

Silbaugh, then over the age of 40, commenced employment at Brookville Hospital on June 24, 2024. (ECF No. 1 ¶ 16). Around six months later, Defendants hired Taylor Kutek as "Office Manager." (*Id.* ¶ 19). Under her management, the workplace grew increasingly inhospitable to older, female workers. Kutek routinely referred to such employees, including Silbaugh, as "old bitches" or "the old ones." (*Id.* ¶ 21). She also sought "out any pretext to reprimand and terminate" them. (*Id.* ¶ 24). As it relates to Silbaugh, the opportunity to do both arose on February 20, 2025.

On that day, "a patient exhibiting signs of immediate medical distress approached" Silbaugh at her desk. (*Id.* ¶ 34). Per Defendants' protocol, Silbaugh directed the patient to the hospital's clinic. (*Id.*). Soon after, a second person approached Silbaugh, exhibiting "hostile and aggressive" behavior. (*Id.* ¶ 35). While

---

[2] This recitation is drawn from the well-pleaded facts of Silbaugh's complaint, which I must accept as true for purposes of the pending motion to dismiss. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Silbaugh struggled to assist this latest patient, Kutek arrived and—with no regard for the ongoing incident—"harshly reprimand[ed]" Silbaugh "for sending the first patient to the clinic." (*Id.* ¶ 36–37). Neither the second patient nor Kutek relented, but after several minutes, Silbaugh reached the end of her scheduled shift. (*Id.* ¶ 38). At that point, she promptly clocked out and left the workplace. (*Id.*).

A little over a month later, a "Human Resources Representative" identified in the complaint only as "Trevor" summoned Silbaugh to his office. (*Id.* ¶¶ 39, 41). Upon her arrival, Silbaugh encountered both Trevor and "Regional Operations Director" Salvador Campos ("Campos"). (*Id.* ¶ 42). Trevor informed Silbaugh that Defendants had chosen to terminate her employment and that the decision came "solely from Kutek." (*Id.* ¶¶ 43). Kutek had reported that, during the incident on February 20, 2025, Silbaugh "was throwing things, breaking objects, and cursing in front of patients and staff." (*Id.* ¶¶ 44–45). Silbaugh denied the allegations, but Defendants stood by their decision. (*Id.* ¶ 47).

In response, Silbaugh filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 14). On September 10, 2025, the EEOC issued her a Notice of Right to Sue letter. (*Id.*). Silbaugh then timely filed the instant lawsuit, alleging both violations of the ADEA and state defamation law. (*Id.*).

## II.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009). This necessarily requires the complaint to plead facts that satisfy the essential elements of any given claim. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016).

## III.    Discussion

Silbaugh's complaint at Count II accuses Defendants of defamation. Under Pennsylvania law, such a cause of action requires her to allege facts that could plausibly establish: "(1) the defamatory character of [a] communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to [the] plaintiff; (6) special harm to the plaintiff; [and] (7) abuse of a conditionally privileged occasion." *Maier v. Maretti*, 671 A.2d 701, 704 (Pa. Super. Ct. 1995) (citing 42 Pa. Cons. Stat. § 8343(a)). Defendants argue that she falters at both step two (publication) and seven (abuse of privilege). To the contrary, at this early stage, Silbaugh has pled enough to proceed.

### a.  The Complaint Plausibly Alleges Publication

Silbaugh claims that Kutek published the allegedly defamatory communication accusing the former of "throwing things, breaking objects, and

cursing in front of patients and staff" when "she communicated it verbally to Trevor and Campos." (ECF No. 1 ¶ 74). Defendants contend, however, that because "managerial employees are not third parties under Pennsylvania law," (ECF No. 11 at 1), any oral representations that Kutek (a managerial employee) made to Trevor and/or Campos (two other managerial employees) do not constitute publications, (ECF No. 7 at 5).

But this managerial exception appears nowhere in caselaw or statute. Quite the opposite, Pennsylvania courts have suggested that "statements concerning termination/discipline matters made among employees, outside of [a defamation claimant's] presence . . . meet the element of 'publication.'" *Brinker v. St. Luke's Hosp.*, No. 1441 EDA 2012, 2013 WL 11256857, at *8 (Pa. Super. Ct. July 2, 2013) (citing *Foster v. UPMC South Side Hosp.*, 2 A.3d 655 (Pa. Super. Ct. 2010); *Miketic v. Baron*, 675 A.2d 324 (Pa. Super. Ct. 1996)). In *Brinker*, the Superior Court held that a defamation plaintiff had "presented sufficient evidence of 'publication' as it relate[d] to statements made between" three managerial employees and a company president. *Id.* In *Foster*, the Superior Court accepted that a letter from in-house counsel to the director of corporate risk management qualified as a publication for defamation purposes. *See Foster*, 2 A.3d at 663–64. The *Miketic* Court treated communications between a university employee's supervisor and the chairman of the employee's department as "publications." *See Miketic*, 675 A.2d at 330. And in

5

*Daywalt v. Montgomery Hospital*, 573 A.2d 1116 (Pa. Super. Ct. 1990), a supervisor's statements to the company personnel director amounted to a "publication." *Id.* at 1118. Each of these cases involved communications between so-called "managerial employees," yet none of them held that such employees occupied some inscrutable role in the liminal space between first and third parties.

Moreover, the Superior Court's decision in *Davis v. Resources for Human Development, Inc.*, 770 A.2d 353 (Pa. Super. Ct. 2001)—from which Defendants insist the managerial exception derives—only reinforces the just-discussed line of precedent. In *Davis*, the Court explained that a defamatory "communication must be expressed to a third party in order to be 'published.'" 770 A.2d at 358 (citing *Elia v. Erie Ins. Exchange*, 634 A.2d 657, 660 (Pa. Super. Ct. 1993)). It then held that the plaintiff had "failed to show that the [communication at issue] was published" because "the communication was between the four authors of [a] letter and" the plaintiff. *Id.* As *Brinker* later summarized, this established that defamatory statements communicated only to a defamation plaintiff at a disciplinary meeting or in a termination letter "do not meet the element of publication.'" 2013 WL 11256857, at *9. "[S]tatements concerning termination/discipline matters made among employees, outside of the [defamation plaintiff's] presence," on the other hand, *do* satisfy that element. *Id.* at *8.

6

Thus, because the complaint asserts that Kutek relayed allegedly defamatory information to Trevor and Campos outside of Silbaugh's presence, it is fairly read to have pled "publication."

**b. The Complaint Plausibly Alleges the Abuse of a Conditional Privilege**

While "Pennsylvania law recognizes the absolute privilege of employers to publish defamatory matter in notices of employment termination," *Miketic*, 675 A.2d at 327–28, "private communications among employers regarding discharge and discipline" receive only conditional privilege. *Daywalt*, 573 A.2d at 1118. This conditional privilege applies to statements like those Kutek allegedly made to Trevor and Campos to prevent the threat of defamation from silencing would-be speakers who seek to communicate matters of importance to those they "reasonably believe[] . . . share[] a common interest in the subject matter and [are] entitled to know." *Miketic*, 675 A.2d at 330 (quoting *Daywalt*, 573 A.2d at 1118). But only when the statements are "made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause." *Id.* at 329. The privilege is, therefore, forfeited when the publisher acts "with malice" or "negligence," *Bargerstock v. Washington Greene Cmty. Action Corp.*, 580 A.2d 361, 364 (Pa. Super. Ct. 1990), or makes a statement "for [a] purpose other than" to apprise one who shares a common interest of pertinent facts, *Green v. Mizner*, 692 A.2d 169, 175 (Pa. Super. Ct. 1997). On a motion to dismiss, of course, the question is not whether the defendant has

7

actually abused the privilege but whether, taking all well-pleaded facts as true, the plaintiff has plausibly alleged as much. *See Martin v. Impact Health*, No. 23-cv-04447, 2024 WL 3512069, at *5 (E.D. Pa. July 23, 2024). Silbaugh has done so.

According to the complaint, Kutek regularly referred to older female employees, including Silbaugh, in a derogatory manner, (ECF No. 1 ¶¶ 21–22, 30, 32), and contrived pretexts to justify firing them, (*Id.* ¶¶ 25, 29). The evidence may not ultimately support this nefarious depiction, but at the pleading stage, taking Silbaugh's allegations as true, it is at least plausible that Kutek accused Silbaugh of "throwing things, breaking objects, and cursing in front of patients and staff" to facilitate the removal of yet another older female employee against whom she harbored animus. *Cf. Maier v. Maretti*, 671 A.2d 701, 706–707 (Pa. Super. Ct. 1995) (holding, at summary judgment, that the defamation plaintiff failed to demonstrate abuse of a conditional privilege because she testified that the defendant "treated her fairly and . . . had no apparent personal grudge against [her]"). This distinguishes Silbaugh's case from *Miketic* and *Foster*, where the defamation plaintiffs alleged "abuse of privilege [only] in a series of legal conclusions." *Miketic*, 675 A.2d at 330; *see Foster*, 2 A.3d at 665 ("complaint contains no allegations regarding abuse of privilege"). The complaint here is, instead, akin to the one filed in *Green*, which the Superior Court read to "support[] a conclusion that [the defamation defendants]

8

abused their conditional privilege." 692 A.2d at 175. As such, Silbaugh may—like the plaintiff in *Green*—proceed to discovery.

Defendants fear that this result will "eviscerate managers' conditional privilege to discuss legitimate causes for termination against their employees." (ECF No. 11 at 5). But they needn't fret. Bare allegations of malice will never survive a motion to dismiss. When, however, a plaintiff describes with particularity a pattern of discrimination, identifies specific employees subjected to that discrimination, and articulates a connection between the animus motivating the discrimination and an allegedly defamatory statement, the conditional privilege must yield and permit more extensive development of the factual record. As *Miketic* and *Foster* demonstrate, many plaintiffs will fail to satisfy this standard. Yet those who succeed deserve to have their cases heard, and hearing them poses no existential threat to the conditional privilege.

Accordingly, the following order is entered:

## **ORDER OF COURT**

AND NOW, this May 26, 2026, for the reasons set forth herein, it is hereby ORDERED that Defendants' motion to dismiss (ECF No. 6) is DENIED.

_____/S/ D. Brooks Smith_____

D. Brooks Smith
United States Circuit Judge
Sitting by Designation
